# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2010

No. 09-60182

Charles R. Fulbruge III
Clerk

JOE H. BRYANT, JR.,

> Plaintiff - Appellant - Cross-
> Appellee

v.

MILITARY DEPARTMENT OF THE STATE OF MISSISSIPPI,

> Defendant - Appellee - Cross-
> Appellant

FRANKLIN E. CHALK; FREDERICK D. FEINSTEIN; ROY A. GRAHAM; BILLY JOE GRESSETT; DONALD E. JONES; LANGFORD L. KNIGHT; F. GREGORY MALTA; WILLIAM F. PARTEN; ROBERT E. PIERCE; ROGER E. SHIRLEY; CHARLES F. STEED; AARON K. WILSON; THOMAS TEMPLE; JOHN DOES 1-20; LESLIE WILKES,

> Defendants-Appellees.

---

Appeals from the United States District Court
for the Southern District of Mississippi

---

Before JONES, Chief Judge, and GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Col. (Ret.) Joe H. Bryant ("Bryant"), a former member of the Mississippi Air National Guard's ("MSANG") 186th Refueling Wing, sued MSANG and individual MSANG officials ("Individual Appellees"), asserting claims under: (1) the Military Whistleblower Protection Act, 10 U.S.C. § 1034; (2) the Mississippi

No. 09-60182

Whistleblower Protection Act, MISS. CODE ANN. §§ 25-9-171-77; (3) 42 U.S.C. § 1983; (4) 42 U.S.C. § 1985; and (5) 42 U.S.C. § 1986. Bryant later amended his complaint to add various state law claims against individual MSANG officials. Through three separate orders the district court disposed of all claims against MSANG and the Individual Appellees in their official capacities and all of the federal law claims against the Individual Appellees in their individual capacities.[1] Bryant appeals these rulings. MSANG cross-appeals, alleging that the district court erred in denying MSANG's motion for sanctions. We affirm the district court's dismissal of Bryant's claims and, as to MSANG's cross-appeal, affirm the district court's denial of sanctions.

## I

Over an eight-year period during his MSANG service, Bryant allegedly observed various acts of misconduct by MSANG officials. Bryant reported the alleged misconduct to superior officers and ultimately filed a complaint with the Inspector General of the Department of the Air Force. The Inspector General undertook two separate investigations, in which a number of Bryant's allegations of wrongdoing were substantiated. Bryant's charges and the ensuing investigation were the subject of regular media coverage in local newspapers and a talk radio show.

According to Bryant, MSANG and the Individual Appellees responded to Bryant's "whistleblowing" with a litany of retaliatory acts. These acts allegedly included employment-related actions such as attempts to force Bryant's resignation, career-damaging reports, and assignment to a position under a junior officer. Bryant also claims that MSANG officials committed acts of vandalism and violence, such as breaking into Bryant's vehicle, stealing his

---

[1] Bryant's claims against individual Appellee F. Gregory Malta in his individual capacity are still pending because Malta did not move for summary judgment. Bryant's state law claims against individual Appellee Robert E. Pierce also remain pending.

No. 09-60182

laptop, firing gun shots in and around his home, cutting the gasoline line to his wife's vehicle, harassing him with anonymous phone calls, and physically assaulting him. Several of the Individual Appellees also filed civil lawsuits against Bryant, which he contends were retaliatory and lacked merit. Based on these allegations Bryant asserted federal and state law claims against MSANG and the Individual Appellees.

In August 2005, the district court granted a motion to dismiss all claims against MSANG and the Individual Appellees in their official capacities. The district court dismissed all claims against MSANG because the Military Whistleblower Protection Act, 10 U.S.C. § 1034 does not create a cause of action, and insofar as MSANG is a state agency, all other claims are barred by the Eleventh Amendment. Additionally, the district court held that all employment-related claims against MSANG and the Individual Appellees in their official capacities are barred under *Feres v. United States*, 340 U.S. 135 (1950). In July 2007, the district court granted summary judgment in favor of the Individual Appellees in their individual capacities as to Bryant's Military Whistleblower Protection Act, Mississippi Whistleblower Protection Act, §§ 1983, 1985(2) and (3), and assault and battery claims. The court also disposed of some, but not all, of Bryant's claims under §§ 1985(1) and 1986. Finally, in July 2008, the district court granted summary judgment in favor of the Individual Appellees in their individual capacities as to Bryant's remaining §§ 1985(1) and 1986 claims. The district court entered a Rule 54(b) certification of final judgment as to those claims denied and parties dismissed by the orders of August 26, 2005, July 17, 2007, and July 17, 2008. Bryant thereafter brought the instant appeal in which he contends that the district court erroneously applied the *Feres* doctrine to dismiss the claims against MSANG and the Individual Appellees in their official capacities, incorrectly granted summary judgment in the July 2007 order, and

3

No. 09-60182

misapplied First Amendment law in determining that Bryant's § 1985(1) and § 1986 claims predicated on allegedly retaliatory litigation were barred.

## II

This court reviews Rule 12(b)(1), 12(b)(6), and 12(c) dispositions *de novo*.[2] *See, e.g.*, *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). This court also reviews *de novo* a grant of Rule 56 summary judgment. The court affirms summary judgment if the record reveals no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Croft v. Governor of Texas*, 562 F.3d 735, 742 (5th Cir. 2009). When conducting its review, the court will evaluate the evidence in the light most favorable to the non-movant. *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009).

## III

Bryant asserts that the district court erred in dismissing his claims against MSANG under the *Feres* doctrine. His brief, however, substantively discusses the *Feres* issue only in relation to his vandalism and violence claims against the Individual Appellees. The district court clearly held that *Feres* was not a ground for disposing of the vandalism claims and only applied *Feres* to Bryant's claims of employment-related retaliation against MSANG and the Individual Appellees. *Bryant v. Military Dep't of State of Miss.*, 381 F. Supp. 2d 586, 594 (S.D. Miss. 2005) ("*Bryant I*"). Accordingly, the limited *Feres* discussion in Bryant's brief centers around the wrong claims and the wrong parties. Bryant's failure to adequately brief the *Feres* issue is a waiver of these claims. *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001). Bryant did not

---

[2] MSANG styled its motion to dismiss, in which the Individual Appellees joined, as a "Rule 12(b)(1), 12(b)(6), 12(c), and Eleventh Amendment Motion to Dismiss and for Judgment on the Pleadings." The district court did not specify under which procedural mechanism(s) it was dismissing the claims, and Bryant did not specify which procedural grant(s) of dismissal he appeals, but regardless, the standard of review is the same.

preserve the issue merely by mentioning it in the "Statement of Issues." *See, e.g.*, *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1067 (5th Cir. 1996) (declining to address the merits of an issue raised only in the Statement of Issues and not argued in the body of the brief). Accordingly, we decline to address the propriety of the district court's dismissal under *Feres*.

Moreover, the decision below stands on independent grounds. The district court ruled that all of Bryant's claims against MSANG are barred by the Eleventh Amendment and that the §§ 1983, 1985, and 1986 claims are barred because MSANG is not a "person" under those statutes. Bryant failed to argue that either of those determinations was incorrect. His failure to do so is fatal to his appeal of MSANG's dismissal from this litigation. *See, e.g.*, *Berry v. Jefferson Parish*, 326 F. App'x 748, 750 (5th Cir. 2009) (unpublished) ("An unbriefed argument is an unpreserved argument."); *see also* FED. R. APP. P. 28(a)(9)(A).

## IV

Bryant next contends that the district court erroneously granted partial summary judgment in its July 2007 order. *See Bryant v. Miss. Military Dep't*, 519 F. Supp. 2d 622, 626 (S.D. Miss. 2007) ("*Bryant II*").[3] Bryant's appeal addresses only the district court's grant of summary judgment on his §§ 1983, 1985(1) and (2), and 1986 claims, and the state law assault and battery claims.[4]

---

[3] The district court's order, referring to its previous dismissal of Bryant's Military Whistleblower Protection Act claims, reiterated that the statute does not authorize a private cause of action. *Bryant II*, 519 F. Supp. 2d at 626. The district court granted summary judgment on Bryant's claim under the Mississippi Whistleblower Protection Act because Bryant offered no response to the Individual Appellees' arguments that the Act applies only to actions by a state "agency," not coworkers; covers only acts that impact employment; and does not apply for actions after an employee is no longer employed. *Id.* at 626-27. Bryant raises no issue on appeal with respect to these rulings.

[4] Bryant spends some three pages of his brief discussing his claims of intentional and negligent infliction of mental distress, defamatory/false light liability and intentional interference with employment. It is unclear whether Bryant believes that these claims were dismissed. In any event, we need not address these claims because the district court has retained jurisdiction over them. *See Bryant II*, 519 F. Supp. 2d at 633-34 (noting that each of

The district court ruled that Bryant could not succeed on any § 1983 First Amendment claim because he failed to show that the Individual Appellees acted "under color of state law." With respect to Bryant's §§ 1985 and 1986 claims, the district court ruled that any claims under §§ 1985(2) and (3) fail because Bryant could not demonstrate that the Individual Appellees were motived by "racial or some other type of invidious, class-based distinction." *Id.* at 628 (citations omitted). The district court further found that Bryant failed to create a genuine issue of material fact with respect to his § 1985(1) claim based on allegations of vandalism and violence. Finally, the district court dismissed Bryant's assault and battery claims as barred by the statute of limitations.

## A

A claim for violation of First Amendment rights must be brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United Sates Constitution or the laws of the United States. *Ellison v. De La Rosa*, 685 F.2d 959, 960 (5th Cir. 1982). A person acts "under color of state law" if he engages in the "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (quoting *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999)). However, a state officer does not act "under color of state law" if he "pursues personal objectives without using or misusing the power granted to him by the state to achieve the personal aim." *Id.* (quoting *Harris v. Rhodes*, 94 F.3d 196, 197 (5th Cir. 1997)).

Bryant first argued that his lawsuit addressed actions taken by the Individual Appellees as "individuals, who just so happen to also be in the

these claims is based on allegations regarding defendant Pierce's activities and concluding that issues of material fact precluded summary judgment as to the tort claims against Pierce).

military but who act for no military purpose or reasons; rather, they act for their own hatred against the plaintiff." *Bryant II*, 519 F. Supp. 2d at 628. Bryant further argued that the Individual Appellees' "actions occur[ed] off base, have no justifiable military purpose, [and] are perpetrated solely for personal reasons." *Id.* Recognizing that these allegations would doom his § 1983 claims, Bryant then contended that the Individual Appellees acted under color of state law because they "clothe[d] themselves as members of the state militia" and attempted to silence Bryant for their own personal benefit, namely to protect their miliary careers. *Id.* But the district court concluded that Bryant's allegations, *inter alia*, assault, vandalism, harassing phone calls, trying to get Bryant fired from his civilian job, and firing gun shots near Bryant's home, even if undertaken to protect the Individual Appellees' military positions, "were not made possible by defendants' military positions and did not occur in the course of defendants' performing any of their military duties." *Id.*

Bryant has failed to point to specific facts showing there is a genuine issue whether the Individual Appellees acted under color of state law.[5] He makes only a conclusory assertion that these individuals wanted to protect their military careers. A motive to protect one's career is a personal motivation, not specific to individuals possessing state authority, and without more, namely, an act under color state law in the performance of actual or pretended duties or done with a pretense of official authority, is not sufficient. *See, e.g.*, *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (finding dismissal of a § 1983 claim proper where an altercation arose of out of a personal family and political dispute and the police officer did not use or threaten to use any state authority during the altercation); *see also Revene v. Charles County Comm'rs*, 882 F.2d 870

---

[5] Indeed, as detailed above, Bryant's brief undercuts his own position by emphasizing that the Individual Appellees acted for their own "personal benefit" and characterizing their actions as an "extra-military matter." Appellant's Br. at 11, 35.

(4th Cir. 1989) ("[T]he nature of the act is controlling."); *Manning v. Jones*, 696 F. Supp. 1231, 1235 (S.D. Ind. 1988) (finding that not all acts of state officials are under color of state law where motivation is personal and actor did not invoke or use any official authority).  It does not follow from a desire to protect their military careers that any of these individuals' actions were achieved through the use or misuse of power granted by the state.  Indeed, the allegations taken in the light most favorable to Bryant implicate no exercise of state power whatsoever.  No reasonable jury could render a verdict in Bryant's favor based on allegations of motive alone, and accordingly, the district court properly granted summary judgment on Bryant's § 1983 claims.  *See Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991).

**B**

Bryant alleges that the Individual Appellees violated §§ 1985(1) and (2) and § 1986 by forming an association known as the "Concerned Guardsmen of Mississippi" to carry out acts of vandalism and violence and by filing retaliatory civil lawsuits against Bryant.  The district court found that a § 1985(2) claim would not lie because the "equal protection" language of that section requires a showing that the conspiracy was motivated by class-based discriminatory animus and whistleblowers are not a protected class.  *See Bryant II*, 519 F. Supp. 2d at 629.  With respect to the § 1985(1) claims, Bryant's pleadings alleged specific instances of vandalism and violence, but the district court found that summary judgment nonetheless was warranted because Bryant failed to rebut the Individual Appellees' evidence that other members of the community had a "strong motive to dislike" Bryant and therefore could have perpetrated the acts of vandalism and violence.  *Id*. at 631.

Section 1985(1) prohibits conspiracies "to prevent, by force, intimidation, or threat" a federal officer from discharging his duties or to injure him because

No. 09-60182

of his lawful discharge of his duties. 42 U.S.C. § 1985(1) (2009). Section 1985(2)[6] prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection. 42 U.S.C. § 1985(2) (2009). Section 1986 penalizes those with knowledge of and the power to prevent § 1985 conspiracies who fail to do so. 42 U.S.C. § 1986 (2009).

On appeal, Bryant contends that the Individual Appellees' actions were intended to prevent him from discharging his duties as an MSANG officer and to impede him from "engaging the due course of justice . . . with the intent to deny . . . the equal protection of the laws." Bryant argues, without citation to any authority, that "[n]o class status is need[ed] for such a claim under 42 U.S.C. § 1985(2)." We disagree. The "language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or . . . class-based, invidiously discriminatory animus behind the conspirator's action." *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added) (referring to § 1985(3)). This Circuit has held that the class-based animus requirement of § 1985(3) applies equally to causes of action under the second clause of § 1985(2) such as Bryant's claims here. *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986) (noting the parallel language in §§ 1985(2) and 1985(3) prohibiting certain conduct with an intent to deny "*equal protection* of the laws"). Moreover, we have previously rejected the argument that "whistleblowers" are a protected class for purposes of § 1985 claims. *See Garrie v. James L. Gray, Inc.*, 912 F.2d 808, 813 n.13 (5th Cir. 1990). Because

---

[6] The first clause of § 1985(2) prohibits conspiracies to deter witnesses from attending court or testifying, punish witnesses who have so attended or testified, or injure jurors. The district court found this subsection inapplicable to Bryant's claims, and Bryant does not appeal that finding.

No. 09-60182

Bryant's status as a whistleblower does not entitle him to protection under § 1985(2), the district court correctly dismissed the claim.

Bryant also appeals the district court's grant of summary judgment on his § 1985(1) claims predicated on vandalism and violence. A cause of action under § 1985(1) requires no allegation of racial or class-based discriminatory animus. *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983). Accordingly, Bryant's "failure to identify any such animus is no impediment." *Bryant II*, 519 F. Supp. 2d at 629. Nonetheless, the district court properly concluded that Bryant's claim is barred because he failed to create a genuine issue of material fact whether the Individual Appellees committed the alleged acts. Bryant presented evidence that *someone* committed acts of violence, vandalism and harassment. For instance, someone sent an anonymous greeting card to his home congratulating Bryant on having an illegitimate child. Someone also apparently mailed letters to Bryant's employer, FedEx, alleging among other things that Bryant smuggled machine guns on a FedEx plane. While Bryant succeeded in presenting evidence of violence, threats and intimidation, he presented no direct evidence that any of the Individual Appellees perpetrated these acts. Instead Bryant pointed to circumstantial evidence that his whistleblowing activities were *motive* for MSANG officials to commit retaliatory acts. But the Individual Appellees responded with evidence that other members of the community were angered by Bryant's activities and thus shared a similar motive. "Once the moving party has shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issues for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). To survive summary judgment, Bryant was required to point to *specific facts* that would create a triable question whether the Individual Appellees, rather than someone else, committed the retaliatory acts. Bryant failed to do so. His only response to Individual Appellees' evidence of others' motive was that

10

No. 09-60182

he believed that the Individual Appellees' motive was stronger. Bryant's belief is not evidence that creates a triable fact issue; therefore, summary judgment was proper.

## C

Bryant also appeals the district court's dismissal of his assault and battery claims against Individual Appellees, Thomas Temple and Leslie Wilkes. The alleged assault occurred, at the latest, on September 12, 2003.[7] Bryant did not file his suit until March 17, 2005. The district court found these claims time barred by Mississippi's one-year statute of limitations. Bryant tries to avoid the statute of limitations by arguing that the assault and battery were part of a pattern of ongoing and continuing threats, harassment, and intimidation. The Individual Appellees respond that assault and battery are not among the types of torts that can be classified as "continuing" and therefore are not exempted from the statute of limitations as "continuing torts."

The statute of limitations for assault actions under Mississippi law is one year. *See* MISS. CODE ANN. § 15-1-35 (2009) ("All actions for . . . assault and battery . . . shall be commenced within one (1) year next after the cause of such action accrued, and not after."). Under Mississippi law, the statute of limitations is tolled by the continuing tort doctrine where there is a repeated injury. *See McCorkle v. McCorkle*, 811 So. 2d 258, 264 (¶ 12) (Miss. Ct. App. 2001). "This principle applies, however, in situations where a defendant commits repeated acts of wrongful conduct, not where harm reverberates from a single, one-time act or omission." *Smith v. Sneed*, 638 So. 2d 1252, 1255 (Miss. 1994). A "continuing tort" is "one inflicted over a period of time, it involves a wrongful

---

[7] The record inconsistently reflects the date of the alleged assault and battery alternately as September 3, 2003 or September 12, 2003. Regardless of which date is correct, the statute of limitations would have run by the time Bryant filed suit on this tort claim.

conduct that is repeated until desisted, and each day creates a separate cause of action." *Id.* at 1256.

Bryant's continuing tort theory fails. First, we find unavailing the argument that the allegations comprising Bryant's § 1985 claims can be combined with the single incident of assault and battery to constitute a "continuing tort." For one thing, a continuing tort is "*a* wrongful conduct that is repeated until desisted," not an amalgam of various wrongs. *Id.* (emphasis added). Second, while the district court opines that "the assault and battery is not itself a continuing tort," we need not decide whether under Mississippi law assault and battery may ever constitute a continuing tort.[8] An allegation of a single incident is plainly insufficient to meet the requirement that the wrongful conduct be repeated and that the harm not "reverberate from one wrongful act of omission." *Id.* at 1255. The continuing tort doctrine does not apply and Bryant's assault and battery claim is barred.

## V

Finally, Bryant appeals the district court's grant of summary judgment in defendants' favor on his § 1985(1) claim based on allegations of retaliatory litigation. The allegedly "retaliatory litigation" includes a slander suit, two malicious prosecution suits, and an invasion of privacy suit filed by various Individual Appellees against Bryant. In their first motion for summary judgment, the Individual Appellees had argued that the allegedly retaliatory suits could not form the basis of a § 1985(1) claim. Citing *Bill Johnson's Restaurants v. NLRB*, 461 U.S. 731 (1983), they contended that summary

---

[8] The district court cites no authority that an assault and battery may not be a continuing tort and we have found no such authority under Mississippi law. However, some courts hold that assault and battery may be a continuing tort where, for instance, multiple incidents of assault and battery are perpetrated as in cases of abusive relationships. *See, e.g.*, *Cusseaux v. Pickett*, 652 A.2d 789, 794 (N.J. 1994) (finding that each incident of battery and assault is not a separate, but a continuing tort where part of a pattern of abuse and violence).

judgment was proper because "the filing of a meritorious suit is not an actionable act of retaliation." They maintained that because their suits had a reasonable basis in fact and law they could not be held liable for retaliation. In its July 2007 order the district court denied the motion, explaining that it could not simply assume a reasonable basis for bringing the allegedly retaliatory lawsuits. *Bryant II*, 519 F. Supp. 2d at 632. But in its June 2008 order the district court reconsidered the issue and reached the opposite conclusion after applying *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002). The district court found that Bryant's § 1985(1) claim for retaliatory litigation was barred by the Individual Appellees' First Amendment right of access to the courts. It reasoned that *Bill Johnson's* required the defendants to show that their lawsuits were meritorious, which they failed to do, while *BE & K* required that Bryant show that defendants' lawsuits were "objectively baseless." Applying *BE & K*, the district court granted summary judgment , concluding that Bryant did not show that the litigation was "objectively baseless." *Bryant v. Miss. Military Dep't*, 569 F. Supp. 2d 680, 682 (S.D. Miss. 2008) ("*Bryant III*").

The First Amendment of the federal Constitution guarantees the right of access to the courts to petition for redress of grievances. *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972). We have found no case addressing the intersection of the right to petition with § 1985(1)'s prohibition on conspiracies to interfere with a federal officer's discharge of his duties. Because the contours of First Amendment petitioning jurisprudence have been largely fleshed out in the antitrust and labor context, we turn to these cases. The *Noerr-Pennington* doctrine holds that the right to petition the government for redress is generally immune from antitrust liability unless the petitioning activity is a "sham." *See United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). "Baseless litigation is not immunized by the First Amendment right

13

to petition." *Bill Johnson's*, 461 U.S. at 743. But determining what litigation is "sham" or "baseless" requires the drawing of a "difficult line" to separate objectively reasonable claims from a "pattern of baseless, repetitive claims . . . which leads the factfinder to conclude that the administrative and judicial processes have been abused." *Cal. Motor Transp.*, 404 U.S. at 513. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*, the Supreme Court held that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." 508 U.S. 49, 57 (1993). The Supreme Court enunciated a two-part test for sham litigation: (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) "only if the challenged litigation is objectively meritless may a court examine the litigant's subjective motivation" to determine "whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' through the 'use [of] the governmental *process* as opposed to the *outcome*.'" *Id.* at 60–61 (emphasis in original) (citations omitted). The plaintiff bears the burden to disprove the challenged lawsuit's legal viability before subjective intent can be considered. *Id.* This test looks at objective merit at the outset, not whether the claim ultimately prevailed. *Id.* at 61 n.5.

The Supreme Court has drawn the contours of the First Amendment petition right somewhat differently in the labor law context. In *Bill Johnson's*, the case on which the district court's July 2007 denial of summary judgment was based, the NLRB enjoined an employer from suing picketing employees for defamation on the ground that the employer's suit constituted a retaliatory and unfair labor practice in violation of the National Labor Relations Act. *Bill Johnson's*, 461 U.S. at 733–35. *Bill Johnson's* developed two tests for merit, depending on the stage of the litigation at which the merit of the case is assessed. As to whether the NLRB could enjoin an ongoing suit, the Court

14

adopted the test for summary judgment, *i.e.* whether the lawsuit presents "a genuine issue of material fact." If so, as in the case of Bill Johnson's suit against the picketing employees, then the suit could not be enjoined. *Id* at 744–45 & n.11. In dicta, the Court spelled out a second test to be applied once the underlying litigation is completed.

> If the employer's case . . . ultimately proves meritorious and he has judgment against the employees, the employer should prevail . . . because the filing of a meritorious law suit, even for a retaliatory motive, is not an unfair labor practice. If judgment goes against the employer . . . or if his suit is withdrawn or is otherwise shown to be without merit, the employer has had its day in court, the interest of the state in providing a forum for its citizens has been vindicated, and the Board may then proceed to adjudicate the . . . unfair labor practice case. The employer's suit having proved unmeritorious, the Board would be warranted in taking that fact into account in determining whether the suit had been filed in retaliation.

*Id* at 747. In a departure from the *Professional Real Estate Investor's* "objectively baseless" test, *Bill Johnson's* equated "meritorious" suits with winning and "unmeritorious" with suits that did not prevail. *See id.* Thus, two different standards defining the contours of First Amendment protection for petitioning activity exist: under *Professional Real Estate Investors* the litigation must be found "objectively baseless" before subjective intent is considered, while under *Bill Johnson's*, a reviewing court must simply look to whether the litigant won or lost the suit to determine whether it was "meritorious."

The Supreme Court's grant of certiorari in *BE & K* poised the Court to clarify whether the "objectively baseless" or win-lose test should be the standard for determining what petitioning activity is and is not protected by the First Amendment. The Court was to determine whether the NLRB under *Bill Johnson's* win-lose test could penalize employers who, for a retaliatory purpose, filed but lost objectively reasonable suits. *See BE & K Constr. Co.*, 536 U.S. 516. But the Supreme Court did not ultimately answer that question. Rather, it

issued a narrow holding that the NLRB incorrectly interpreted the NLRA in order to punish suits as "retaliatory" even though they may have been filed for a legitimate purpose. *Id.* at 536. The Court issued this narrow holding rather than address the constitutional question because it determined that the petitioning activity at issue was the "class of reasonably based but unsuccessful lawsuits." *See id.* at 531. Because the suits were "reasonably based," the Court could limit its consideration to the extent to which the NLRB could penalize such suits under the NLRA which prohibits "interfering, restraining, or coercing" employees in the exercise of rights guaranteed in [the NLRA]. *Id* at 536. Here, there is no pending cause of action under the NLRA. Thus, *BE & K* does not answer the question of which test, *Professional Real Estate Investors* or *Bill Johnson's*, should be applied in the first instance. Nor does *BE & K* decide whether a litigant may be liable for bringing an "unsuccessful but reasonably based suit[] that would not have been filed but for a motive to impose the costs of the litigation process, regardless of the outcome, in retaliation for . . . protected activity." *Id.* at 537.

Accordingly, we find the narrow holding of *BE & K* inapposite to the issues raised in this case. Rather, the standard to be applied to the allegedly retaliatory litigation is the *Professional Real Estate Investors* test, requiring a finding that the petitioning activity is "objectively baseless," before subjective intent is considered.[9] This test, rather than *Bill Johnson's*, has been extended outside the area of antitrust to other contexts and we find it appropriate here.

Bryant contends that the district court incorrectly placed the burden to show the suits were objectively baseless on him. The burden to show that a suit is objectively baseless is on the plaintiff who seeks to show that the suit is not deserving of First Amendment protection. *See Prof'l Real Estate Investors*, 508

---

[9] Although the district court cited to *BE & K Construction*, which we find inapplicable, it actually applied the "objectively baseless" standard of *Professional Real Estate Investors*.

U.S. at 60–61. Here, the Individual Appellees moved for summary judgment, and thus were required to offer evidence that the lawsuits they filed were not "objectively baseless," that is, not a lawsuit in which "no reasonable litigant could realistically expect success on the merits." *Id.* at 49. Once they made that showing, the burden was properly on Bryant as the non-moving party to offer evidence showing a genuine issue of material fact as to whether the lawsuits were "objectively baseless." As discussed below, the district court correctly found that Bryant did not meet this burden.

One of the Individual Appellee's lawsuits alleged slander, intentional infliction of emotional distress, and falsehoods/trade libel based on comments that Bryant made in a radio talk show and various newspaper and other publications about the leadership of the MSANG unit. To show that the lawsuit was not "objectively baseless," the Individual Appellees pointed to evidence that Bryant had engaged in a media campaign in which he leaked to the media a copy of an Inspector General's report substantiating some of Bryant's allegations against various MSANG officials, commented in a series of newspaper stories about his allegations, and appeared on a radio talk show in which he said that the MSANG leadership was "corrupt," "had blood on their hands," and "ran the unit like the mafia." Bryant contended that the lawsuit was "objectively baseless" because he had not named names on the radio talk show. But this is insufficient.

Under Mississippi law, slander requires proof of: (1) a false statement that has the capacity to injure the plaintiff's reputation; (2) an unprivileged publication, i.e., communication to a third party; (3) negligence or greater fault on the part of the publisher; and (4) either actionability irrespective of special harm or existence of special harm caused by publication. *Speed v. Scott*, 787 So. 2d 626, 631 (¶21) (Miss. 2001). In responding to the Individual Appellees' first summary judgment motion, Bryant claimed that his statements were absolutely

true and the district court declined to grant summary judgment because defendants offered no evidence that they were false. It appears that to the extent the slander lawsuit was based on statements about any of the allegations that were substantiated in the Inspector General's report, there could be no reasonable expectation of proving falsity. But comments to the effect that the leadership was "corrupt," "had blood on their hands," and "ran the unit like the mafia" are subjective, and the question of falsity is a closer one such that a reasonable litigant might realistically expect to prove falsity. Moreover, even though Bryant had not named names, there was ample public information as a result of the leaked Inspector General's report and other media stories such that Bryant's comments about the "leadership" could be understood to refer to the individuals who filed suit against him.

Individual Appellees also argued that two separate malicious prosecution suits filed against Bryant were not "objectively baseless." Bryant filed criminal assault claims against Individual Appellees Temple and Wilkes that were dismissed after Bryant's presentation of evidence. Temple and Wilkes then each filed malicious prosecution suits against Bryant. Bryant failed to offer any evidence that these suits were objectively baseless at their inception, nor can we say that they were on the record before us. Under Mississippi law, a malicious prosecution claim requires that the plaintiff prove: (1) the institution of civil or criminal proceedings by the defendant; (2) termination of the proceedings in the plaintiff's favor; (3) malice in instituting the proceedings; (4) want of probable cause; and (5) damages. *See Trilogy Commc'ns, Inc v. Times Fiber Commc'ns, Inc.*, 47 F. Supp. 2d 774, 778 (S.D. Miss. 1998); *see also Moon v. Condere Corp.*, 690 So. 2d 1191, 1194 (Miss. 1997). A reasonable litigant could expect to be able to show "want of probable cause" based on the court's dismissal of Bryant's assault claims without considering anything other than Bryant's evidence and argument. Similarly, a reasonable litigant might expect to succeed in showing

18

"malice" by pointing to Bryant's media campaign against the MSANG leadership and well-documented comments that he was "after" them.

The same is true of the various invasion of privacy lawsuits that some Individual Appellees filed against Bryant based on Bryant's leak of the Inspector General's confidential report to local newspapers. Mississippi recognizes a right of action for invasion of privacy based on public disclosure of private facts. *See Young v. Jackson*, 572 So. 2d 378, 381–82 (Miss. 1990). The Inspector General's report was confidential and protected by the Privacy Act; Bryant was told not to disclose its contents. But Bryant gave a copy of the report to two newspapers that then publicized the information. A reasonable litigant could realistically expect to prevail on these facts. Morever, Bryant again failed to offer any evidence that these suits were objectively baseless, other than to argue that they were not prosecuted or were dismissed. But this argument puts the cart before the horse. The Supreme Court has made clear that we are to test the objective merit at the outset, not whether the claim ultimately prevailed. *Prof'l Real Estate Investors*, 508 U.S. at 61 n.5. Because we cannot say that any of these lawsuits were objectively baseless when initiated, we will not consider the defendants' subjective intent in filing the lawsuits. *See id*. at 60–61.

Nonetheless, Bryant vehemently argues that we must consider evidence that the sole purpose in filing these lawsuits was to silence his complaints of wrongdoing and misdeeds committed by the MSANG officials. While we have determined that these lawsuits, all of which were unsuccessful, were not objectively baseless, the Supreme Court has left open the question whether an "unsuccessful but reasonably based suit . . . that would not have been filed but for a motive to impose the costs of the litigation process, regardless of the outcome" might not be protected by the First Amendment. *BE & K*, 536 U.S. 537. At this juncture, such petitioning activity is protected under *Professional Real Estate Investors* and *BE & K*. We cannot say whether the Supreme Court

will, at some future point, determine otherwise.  We have previously declined to create a "retaliatory intent" exception and we reaffirm that view today.  *See Bayou Fleet, Inc v. Alexander*, 234 F.3d 852, 862 (5th Cir. 2000) (declining to create an exception to First Amendment protection for petitioning activity that is not objectively baseless, but undertaken with a "retaliatory intent").

Finally, Bryant contends that we should find the Individual Appellees' various lawsuits outside the bounds of First Amendment protection because they are "illegal" in that they violate the proscription against retaliation found in the Military Whistleblower Act and 42 U.S.C. §§ 1985(1) and 1986.  Bryant also argues that the "objectively baseless" standard ought to be applied in some different, and presumably favorable way in this case because multiple lawsuits were filed against him.  But Bryant made neither of these arguments before the district court and because he failed to do so, we will not consider them now.  *See Pluet v. Frasier*, 355 F.3d 381, 384–85 (5th Cir. 2004).  Because Bryant did not carry his burden to show that the allegedly retaliatory litigation was objectively baseless at the outset, without consideration of subjective intent, we affirm the district court's grant of summary judgment as to Bryant's § 1985(1) retaliatory litigation claims.

## VI

MSANG cross-appeals the district court's denial of its motion for sanctions under Rule 11, 28 U.S.C. § 1927 and the Mississippi Litigation Accountability Act, MISS. CODE ANN. § 11-55-1 *et seq*.  The district court denied the motion for sanctions in a footnote, stating that it was "not persuaded that Bryant's complaint against MSANG was frivolous." *Bryant I*, 381 F. Supp. 2d at 594 n.12.

This court reviews a district court's denial of sanctions for abuse of discretion. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005).  We usually require at least a brief statement of reasons in order to conduct a meaningful review.  *See, e.g., Copeland v. Wasserstein, Perella & Co.*,

No. 09-60182

278 F.3d 472, 484 (5th Cir. 2002); *Schwarz v. Folloder*, 767 F.2d 125, 133–34 (5th Cir. 1985).  Although the district court did not articulate any specific reasons for its decision, we nonetheless find no abuse of discretion.  Sanctions under 28 U.S.C. § 1927 are punitive in nature and require "clear and convincing evidence, that *every facet* of the litigation was patently meritless" and "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court" *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525–26 (5th Cir. 2002) (emphasis in original).  Such sanctions may only be awarded if a party "multiplies the proceedings . . . unreasonably and vexatiously," a standard that focuses on the conduct of the litigation and not on the merits.  *See Religious Tech. Ctr. v. Liebreich*, 98 F. App'x 979, 983 (5th Cir. 2004) (unpublished).  In our review of the record, we see nothing to suggest—let alone clear and convincing evidence—that sanctions would be appropriate under this standard.  And, while Rule 11 has a lower standard of culpability than § 1927, "an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court."  *Berquist v. FyBX Corp.*, 108 F. App'x 903, 904 (5th Cir. 2004) (unpublished) (affirming denial of Rule 11 sanctions on the view that there was no "improper purpose" underlying the complaint).  This case, despite Bryant's losing, is not totally meritless and we see no evidence of an improper purpose.

Accordingly, we affirm the district court's denial of sanctions.

## VII

For the foregoing reasons, we AFFIRM the district court's dismissal of all claims against MSANG and the Individual Appellees in their official capacities and its two separate grants of summary judgment in the Individual Appellees' favor.  On cross-appeal, we AFFIRM the district court's sanctions decision.